**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DENISE JAFFE and DANIEL ADLER, in their capacity as co-executors of Milton Adler's estate, on behalf of themselves and all others similarly situated, | Civil Action No. 13-cv-4866 (VB) |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant. | |
| DERECK WHITTENBURG and JACQUELINE WHITTENBURG, on behalf of themselves and all others similarly situated, | Civil Action No. 14-cv-0947 (VB) |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR UNCONTESTED MOTION FOR**
**ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD PAYMENTS**

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES …………………………………………………………..…...……iii

INTRODUCTION…………………………………………………………………………..1

I.    PROCEDURAL HISTORY …………..…………………………………………………...3

II.    THE COURT SHOULD APPROVE
THE REQUESTED AWARD OF ATTORNEY'S
FEES TO BE PAID BY BANK OF AMERICA TO CLASS COUNSEL…………......5

    A.  Class Counsel Is Entitled To Compensation……………………………..………………5

    B.  Bank of America Will Pay
Class Counsel's Fees At No Cost To The Class…………………………………….…...7

    C.  The Second Circuit Has Approved Both The Percentage Method
And The Loadstar Method, But the Percentage Method Is Preferred………………..10

    D.  The Requested Fee Is Justified Under The Percentage Method…………………..11

        1.  The Full Value Of The Settlement Fund Available Is Considered………...…….11

        2.  The Fee Award Is Supported By The Goldberger Factors……………...………12

            a.   The Time And Labor Expended By Counsel………………….………..…….13

            b.  The Magnitude And Complexity Of The Litigation…………….……….…..14

            c.  The Risk Of The Litigation……………………………….…….……..14

            d.  The Quality Of Representation…………………………………….……...15

            e.  The Requested Fee In Relation To The Settlement……………………..…...17

            f.   Public Policy Considerations…………………………………………..……17

    E.  The Fee Is Justified Under The Lodestar/Multiplier Method…………………..….19

    F.  The Reaction Of The Class Is Overwhelmingly Favorable………...…………..……21

III.    THE EXPENSES INCURRED ARE REASONABLE AND
WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED…………………22

IV.    SERVICE AWARDS……………………………………………………...…………23

CONCLUSION……………………………………………………………………………..24

# TABLE OF AUTHORITIES

**Cases**

*Aros v. United Rentals, Inc.,*
  2012 WL 3060470 (D. Conn. July 26, 2012) .......................................................................... 11

*Beckman v. KeyBank, N.A.,*
  2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) ........................................................................ 7

*Blessing v. Sirius XM Radio Inc.,*
  2012 WL 6684572 (2d Cir. 2012) ............................................................................................ 9

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) ........................................................................................................... 5, 11

*Bricker v. Planet Hollywood New York, L.P.,*
  2009 WL 2603149 (S.D.N.Y. Aug. 13, 2009) ....................................................................... 7

*Cavalieri v. General Elec. Co.,*
  2009 WL 2426001 (N.D.N.Y. Aug. 6, 2009) ......................................................................... 8

*Chin v. RCN Corp.,*
  2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) ....................................................................... 20

*Cohen v. Chilcott,*
  522 F. Supp. 2d 105 (D.D.C. 2007) ...................................................................................... 10

*Cohn v. Nelson,*
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ..................................................................................... 9

*Dahingo v. Royal Caribbean Cruises, Ltd.,*
  312 F. Supp. 2d 440 (S.D.N.Y. 2004) ................................................................................... 12

*deMunecas v. Bold Food, LLC,*
  2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ..................................................................... 19

*Dornberger v. Metropolitan Life Ins. Co.,*
  203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................................... 23

*Elliot v. Leatherstocking Corp.,*
  2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012) ....................................................................... 22

*Goldberger v. Integrated Resources, Inc.,*
  209 F.3d 43 (2d Cir. 2000) ............................................................................................. 10, 18

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ................................................................................ 9

*Hayes v. Harmony Gold Mining Co.,*
2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ........................................................... 7

*Hernandez v. Merrill Lynch & Co., Inc.,*
2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) .................................................. 7, 19

*Hicks v. Morgan Stanley,*
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .......................................... 6, 11, 12

*Hubbard v. Donahoe,*
2013 WL 3943495 (D.D.C. July 31, 2013) ........................................................... 10

*In re Abrams & Abrams, P.A.,*
605 F.3d 238 (4th Cir. 2010) ................................................................................ 18

*In re Alloy, Inc. Sec. Litig.,*
2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ........................................................... 7

*In re Apple Computer, Inc. Deriv. Litig.,*
2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) .......................................................... 9

*In re China Sunergy Sec. Litig.,*
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................................. 21, 22

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...................................................... 20

*In re Continental Ill. Sec. Litig.,*
962 F.2d 566 (7th Cir. 1992) .................................................................................. 9

*In re FLAG Telecom Holdings Ltd. Sec. Litig.,*
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................. Passim

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................... 10

*In re Marsh Erisa Litig.,*
265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................. 7, 16, 17

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ........................................................... 22

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................ 20

*In re Nissan Radiator/Transmission Cooler Litig.,*
  2013 WL 4080946 (S.D.N.Y. May 30, 2013) ....................................... 20

*In re Polaroid,*
  2007 WL 2116398 (S.D.N.Y. July 19, 2007) ........................... 6, 7, 10, 23

*In re Rite Aid Corp. Sec. Litig.,*
  396 F.3d 294 (3d Cir. 2005) ................................................................. 21

*In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.,*
  2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010) ...................................... 22

*In re Sony SXRD Rear Projection Television Class Action Litig.,*
  2008 WL 1956267 (S.D.N.Y. May 1, 2008) ............................................ 8

*In re Sumitomo Copper Litig.,*
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ...................................................... 6

*In re Telik, Inc. Sec. Litig.,*
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................... 6, 14, 19, 20

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,*
  724 F. Supp. 160 (S.D.N.Y. 1989) ....................................................... 20

*In re Veeco Instruments Inc. Sec. Litig.,*
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ......................... 5, 6, 14, 22

*In re Vitamins Antitrust Litig.,*
  2001 WL 34312839 (D.D.C. July 16, 2001) ......................................... 10

*Ingram v. Coca-Cola Co.,*
  200 F.R.D. 685 (N.D. Ga. 2001) ............................................................ 9

*Johnston v. Comerica Mortgage Corp.,*
  83 F.3d 241 (8th Cir. 1996) ................................................................. 10

*Lobatz v. U.S. W. Cellular of Cal., Inc.,*
  222 F.3d 1142 (9th Cir. 2000) ............................................................... 9

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
  671 F. Supp. 819 (D. Mass. 1987) ......................................................... 9

*Malchman v. Davis*,
  761 F.2d 893 (2d Cir. 1985) .................................................................. 8, 9

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................Passim

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ................................................................ 6, 11

*McBean v. City of New York*,
  233 F.R.D. 377 (S.D.N.Y. 2006) .................................................................. 7

*McKinnie v. JP Morgan Chase Bank, N.A.*,
  678 F. Supp. 2d 806 (E.D. Wis. 2009) ........................................................ 12

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .................................................................................... 20

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992) ............................................................... 21

*Robbins v. Koger Props.*,
  116 F.3d 1441 (11th Cir. 1997) ................................................................. 15

*Spicer v. Pier Sixty LLC*,
  2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) ........................................... 19

*Steinberg v. Nationwide Mut. Ins. Co.*,
  612 F. Supp. 2d 219 (E.D.N.Y. 2009) ......................................................... 8

*Taft v. Ackermans*,
  2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ............................................... 12

*Torres v. Gristede's Operating Corp.*,
  2013 WL 2257859 (2d Cir. May 22, 2013) .......................................... 10, 11

*Trustees v. Greenough*,
  105 U.S. 527 (1881) ...................................................................................... 5

*Velez v. Novartis Pharmaceuticals Corp.*,
  2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ........................................... 11

*Viafara v. MCIZ Corp.*,
  2014 WL 1777438 (S.D.N.Y. May 1, 2014) .............................................. 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d (2d Cir. 2005) ................................................................................... 6, 10

*Waters v. Int'l Precious Metals Corp.,*
  190 F.3d 1291 (11th Cir. 1999) .............................................................................. 11

*Williams v. MGM-Pathe Communications Co.,*
  129 F.3d 1026 (9th Cir. 1997) .............................................................................. 11

*Marisol Lopez et al v. Youngblood,*
  2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ....................................................... 10

## **Statutes**

N.Y. Real Prop. Acts Law § 1921 ................................................................... 3, 15, 17

N.Y. Real Prop. Law § 275 .............................................................................. 3, 15, 17

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................................ 8

## **Other Authorities**

4 Newberg, Newberg, Class Actions § 14:6, at 570 (4th ed. 2002) ............................ 12

Manual for Complex Litigation, Fourth, § 21.71 p. 525 ............................................. 10

Plaintiffs Denise Jaffe, Daniel Adler, Dereck Whittenburg and Jacqueline Whittenburg ("Plaintiffs"), individually and on behalf of the proposed Class, submit this Memorandum of Law in support of their uncontested motion for Attorneys' Fees, Expenses, and Service Award Payments.[1]

## INTRODUCTION

Plaintiffs' counsel ("Class Counsel") have achieved an exceptional result for the Class, successfully securing a settlement for up to $6,238,260 for Class members who submit valid and timely claims. The maximum potential recovery if the case were to be litigated to judgment by trial would be $14,100,500, or for individuals, between $500 and $1500 for statutory violations. The Settlement makes available to Class Members between $180 and $780. Specifically, Defendant has agreed to pay those putative class members who submit valid claim forms 52% of the relevant statutory penalty (or between $260 and $780) for 9,534 residential mortgagors for whom a lien release arguably was presented late for the first time and 36% of the relevant statutory penalty (or between $180 and $540) for 7,524 residential mortgagors for whom a lien release arguably was presented late after initially being rejected for recording. Accordingly, the proposed settlement offers substantial benefits to 17,058 class members and avoids the delay, expense and risks inherent in litigating claims through trial and appeal.[2]

Based on this result, Class Counsel respectfully moves this Court for an award of attorneys' fees and costs in the amount of $1.5 million and $20,000, respectively, to be paid separately from the amounts made available to the class. This request represents 19.6% of the value of the aggregate settlement amount (*i.e.*, the amount available to the Class plus attorneys

---

[1] Pursuant to Docket Entry 85, Plaintiffs will be filing their motion for final approval of the class action settlement on or before July 13, 2016.

[2] To date, nearly 4,000 Class Members have submitted claim forms and look forward to receiving the substantial benefit the Settlement will provide.

fees and expenses), or a modest loadstar multiplier of 1.65, well within the range of awards commonly approved within this Circuit. This amount will be paid separately from the amounts made available to the class, and in no way diminishes their recovery. Defendant shall also bear the costs of settlement notice and claims administration. The total potential value of the settlement is $7,758,260 which includes attorneys' fees and costs (55% of the maximum potential recovery).[3] If the Court were to deny the requested award for fees and expenses, in whole or in part, none of the amount Bank of America has agreed to pay Class Counsel would be paid to the Class. Rather, Bank of America's aggregate settlement costs would simply be reduced. Thus, barring Class Counsel from receiving the requested attorneys' fees and expenses would simply benefit Bank of America, without any offsetting gain to the Class. As the amount requested (i) has been agreed upon by the parties through arm's length negotiations; (ii) will not in any way diminish the recovery of the Class; (iii) falls well within the range of attorneys' fees and expenses awarded by courts within this Circuit using either the percentage of the fund or lodestar methodology; and (iv) was adequately disclosed in advance to the Class through various notices and not objected to, this Court should approve the requested attorneys' fees and expenses to compensate Class Counsel for the outstanding result achieved.

Class Counsel also requests that the Court approve the payment of service awards to the named plaintiffs in the amount of $5,000 each to compensate them for the time and effort spent in assisting in the prosecution of the actions on behalf of the Class. Defendant has agreed not to contest the service award request. Moreover, as with Class Counsel's fee request, the service award request was subject to arm's length negotiations between parties, is comparable to other

---

[3] This percentage would be even higher if the costs of notice and administration was included. Pursuant to the Settlement Agreement, Defendant is paying for the costs of notice and administration. Plaintiffs are unaware of the total benefit to the class provided through this provision.

service award payments in other class actions, and was adequately disclosed in advance to the Class and not objected to.  Bank of America has agreed to pay the requested service awards the Court approves up to this requested amount, which is separate and apart from the benefit to be received by Class members and in no way diminishes their recovery.

## I.  PROCEDURAL HISTORY

In these actions, Plaintiffs allege that Defendant Bank of America, N.A. ("Bank of America" or "Defendant") failed to comply with its obligations under N.Y. Real Prop. Acts Law § 1921 and N.Y. Real Prop. Law § 275.  Defendant contests any liability to Plaintiffs and the proposed settlement class as defined in the Settlement Agreement (the "Class").

Before bringing these actions, Plaintiffs' counsel exhaustively investigated the claims of Plaintiffs and the proposed Class, and independently obtained copies of the relevant lien release documents.  Declaration of D. Greg Blankinship ("Blankinship Dec.") ¶ 3.  With this information in hand, Milton Adler filed a putative class action complaint on July 12, 2013, docketed as Case No. 13-cv-04866, against Bank of America in the United States District Court for the Southern District of New York.  Mr. Adler later amended the complaint on September 12, 2013 (the "Adler Action").  Bank of America moved to dismiss the amended complaint on September 30, 2013, which the Court denied following full briefing on July 17, 2014.  Bank of America filed its answer on July 31, 2014.  After Mr. Adler passed away, the co-executors of his estate, Denise Jaffe and Daniel Adler, were substituted on a contested motion as plaintiffs on March 24, 2015.

Plaintiff Dereck Whittenburg likewise filed a putative class action complaint on February 14, 2014, docketed as Case No. 14-cv-00947, against Bank of America in the United States District Court for the Southern District of New York.  Mr. Whittenburg amended the complaint on May 16, 2014 to include Jacqueline Whittenburg as a plaintiff (the "Whittenburg Action").

Bank of America moved to dismiss the amended complaint on June 9, 2014, which Plaintiffs opposed on July 9, 2014.  By stipulation of the parties, the motion was withdrawn without prejudice on July 24, 2014.  On August 5, 2014, Bank of America filed an Answer.

The Adler and Whittenburg Actions are pending before this Court and were deemed related cases for purposes of coordinating class certification briefing and discovery.

The parties engaged in extensive motion practice.  Aside from the motion to dismiss each case, the parties in the Adler Action fully briefed Plaintiffs' motion to substitute a party following the death of Milton Adler.  In the Whittenburg Action, the parties fully briefed Plaintiffs' motion to compel incidental to a discovery dispute concerning the applicable statute of limitations.  In both Actions, the parties also fully addressed by letter Bank of America's motion to compel the production of plaintiff solicitation letters, and fully briefed (but did not file) Plaintiffs' motion for class certification and Bank of America's opposition thereto.  Blankinship Dec. ¶ 6.

The parties engaged in extensive discovery in both the Adler and Whittenburg Actions. Plaintiffs deposed seven Bank of America witnesses, served a series of document requests and interrogatories upon Defendant, and reviewed over 5036 pages of documents, and data for over tens of thousands of mortgages produced by Bank of America.  Plaintiffs also responded to document requests and interrogatories propounded by Defendant, and Bank of America deposed all four Plaintiffs.  As a result of their discovery efforts, both sides had an informed view of the strengths and weaknesses of Plaintiffs' cases and Defendant's defenses, and they had a basis for determining the amount of monetary relief that would be reasonable and appropriate in a settlement context.  Blankinship Dec. ¶ 7.

On October 22, 2015, the parties engaged in an eleven-hour mediation session before JAMS Mediator David Geronemus, Esq. *Id.* ¶ 8. It was only after extended arm's length negotiations under the auspices of Mr. Geronemus that the Settling Parties reached an agreement in principle with respect to a compromise and settlement of the claims raised in the Actions. *Id.*

On January 29, 2016, Plaintiffs filed an uncontested motion for preliminary approval of proposed settlement. On March 4, 2016, the Court entered an order granting Plaintiffs' uncontested motion for preliminary approval of proposed settlement. Class Counsel worked on providing notices to Class members and worked with the Settlement Administrator with respect to administering the Settlement. *Id.* ¶ 9.

## II.  THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES TO BE PAID BY BANK OF AMERICA TO CLASS COUNSEL

Bank of America has agreed to pay Class Counsel up to $1.5 million in attorneys' fees, and $20,000 for costs and other litigation expenses, is separate and apart from the benefit to be received by Class members. Any reduction in the amount requested by Class Counsel will not increase the Class members' recovery but will only decrease the aggregate amounts to be paid by Bank of America in the Settlement. As set forth more fully below, Class Counsel's proposed $1.5 million and $20,000 award for fees and expenses, respectively, merits approval.

### A.  Class Counsel Is Entitled To Compensation

For more than a century, the Supreme Court has held that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury," the attorney is entitled to a reasonable fee. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Trustees v. Greenough*, 105 U.S. 527 (1881); *Boeing Co. v. Van*

*Gemert*, 444 U.S. 472 (1980)).  Awarding Class Counsel fees "serves the salutary purpose of encouraging counsel to pursue meritorious claims on behalf of a class of individuals who could not afford to litigate their individual claims."  *Steiner v. Williams*, No. 99-101186, 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001).  Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore "to discourage future misconduct of a similar nature."  *In re FLAG Telecom Holdings Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010) (citation omitted); *see In re Veeco Instruments Inc. Sec. Litig.*, No. 05-01695, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007) (same).

Indeed, the contingency fee awarded to class counsel should be greater than the fees that the same attorneys would charge their clients in non-contingency cases.  "No one expects a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-1695, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) (same).[4] Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."  *Hicks v. Morgan Stanley*, No. 01-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

---

[4] *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008) (citing *Maley v. Del. Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) ("Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.")).

District courts in the Second Circuit may award attorneys' fees to prevailing class counsel under either a "percentage of the fund" or "lodestar" method to compute fees in common fund cases. *See Wal-Mart*, 396 F.3d at 121; *In re Polaroid*, No. 03-8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007). However, "[t]he trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 121; *see also Polaroid*, 2007 WL 2116398, at *2. In addition, the award must be based on "the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007).

Under either method, Class Counsel's proposed $1.5 million and $20,000 award for fees and expenses, respectively, representing 19.6% of the value of the aggregate settlement amount (*i.e.*, the amount available to the Class plus attorneys fees and expenses), merits approval and falls well within the range of class counsel fees approved in comparable cases using either method. *See In re Marsh Erisa Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (awarding 33.33% of $35 million settlement); *Hayes v. Harmony Gold Mining Co.*, No. 08-03653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding 33.3% of $9 million settlement fund), aff'd, 509 F. App'x 21 (2d Cir. 2013); *Beckman v. KeyBank, N.A.*, No. 12-7836, 2013 WL 1803736, at *12 (S.D.N.Y. Apr. 29, 2013) (awarding 33% of $4.9 million settlement holding); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-8472, 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) (awarding "$2,310,000 which is 33% of the settlement fund."); *Polaroid*, 2007 WL 2116398, at *2 (awarding 28%); *Bricker v. Planet Hollywood New York, L.P.*, No. 08-443, 2009 WL 2603149, at *2 (S.D.N.Y. Aug. 13, 2009) (awarding 25%); and *In re Alloy, Inc. Sec. Litig.*, No. 03-1597, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) (awarding 24%).

**B.     Bank Of America Will Pay Class Counsel's Fees At No Cost To The Class**

Before applying either method, it is important to recognize that Bank of America has

agreed to pay Class Counsel's fees from its own resources.  As a result, the fee award will have

no impact whatsoever on the benefit afforded to the Class members.  When the settling defendant

agrees to pay class counsel's fees from its corporate treasury, independent of the benefit obtained

for the class, "the Court's fiduciary role in overseeing the award is greatly reduced, because there

is no conflict of interest between attorneys and class members."  *McBean v. City of New York*,

233 F.R.D. 377, 392 (S.D.N.Y. 2006).

Here, Bank of America has agreed to pay Class Counsel's fees and expenses up to $1.5

million and $20,000 respectively.  As a result, the fee award will not diminish the benefits

provided to the Class members.  "Thus regardless of the size of the fee award, class members . . .

will receive the same benefit; the fee award does not reduce the recovery to the class.  Under

these circumstances, the danger of conflicts of interest between attorneys and class members is

diminished."  *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-5173,

2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008).  Courts have approved the payment of class

counsel fee awards by the defendant, rather than the Class members.[5]

Moreover, a fee negotiated between the parties is preferable because, as a market-set

price resulting from opposing interests, it is the most accurate method of determining an

appropriate fee.  Defendant has an interest in minimizing the fee, Class Counsel has an interest in

maximizing it, and the negotiations are informed by the parties' knowledge of the work done and

---

[5] *See e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009)
(noting "with approval that the fee award will not be drawn from the common fund but will be
paid directly by [defendant].  In this regard, the fee award, however substantial, will have no
effect on the monetary relief afforded to class members."); *Cavalieri v. General Elec. Co.*, No.
06-315, 2009 WL 2426001, at *3 (N.D.N.Y. Aug. 6, 2009) (same).

result achieved and their views on what the court may award if the matter were litigated.[6]  In

*Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the Court of Appeals for the Second Circuit

concluded that courts should be hesitant to interfere in fee arrangements between the plaintiffs

and the defendants when the defendants have agreed not to oppose the payment of fees up to a

certain amount:

> [W]here ... the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement "not to oppose" an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged.  It is difficult to see how this could be left entirely to the court for determination after the settlement.

*Malchman*, 761 F.2d at 905 n.5.  Similarly, in *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th

Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating

fee requests, stating "it is not the function of judges in fee litigation to determine the equivalent

of the medieval just price," but rather "to determine what the lawyer would receive if he were

selling his services in the market rather than being paid by court order."  *Id.* at 568.[7]

---

[6] The Federal Rules of Civil Procedure expressly authorize the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("The agreement by a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration . . .").

[7] Opinions approving agreed upon fees are legion.  *See e.g., Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) (affirming award of fees and expenses, where defendant had agreed not to oppose request for fees and expenses up to a negotiated ceiling and to be paid separately from class settlement benefits); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (upholding the district court's award of attorneys' fees where the court had approved attorneys' fees and costs of $5.2 million that were negotiated after the final settlement was achieved); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves.").  *Cf., Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee amount"); *In re Apple Computer, Inc. Deriv.*

In fact, the Second Circuit rejected an objector's argument relating to a negotiated fee provision, holding "that such provisions, without more, do not provide grounds for vacating the fee." *Blessing v. Sirius XM Radio Inc.*, No. 11-3696, 2012 WL 6684572, at *2 (2d Cir. 2012) (endorsing the Second Circuit's decision in *Malchman* on "clear sailing" provisions).

As such, Class Counsel respectfully submits that the fact that the fee was negotiated at arm's length and will in no way reduce the funds available for the Class, supports approving the requested fee.

### C. The Second Circuit Has Approved Both The Percentage Method And The Lodestar Method, But The Percentage Method Is Preferred

Courts have developed two methods for awarding attorneys' fees in successful class actions: the percentage method and the lodestar/multiplier method. *Maley*, 186 F. Supp. 2d at 369. A court applying the percentage method "sets some percentage of the recovery as a fee." *Goldberger*, 209 F.3d at 47 (citation omitted).[8] In doing so, the court considers six factors:

---

*Litig.*, No. 06-4128, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement"); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.") (citation omitted).

[8] In a "constructive fund" case such as this, it is appropriate to add the amount made available to the class to the fees requested to determine the value of the total fund for purposes of determining the percentage of the fund the fee request represents. *See, e.g.*, *Torres v. Gristede's Operating Corp.*, No. 12-3336, 2013 WL 2257859, at *3 (2d Cir. May 22, 2013); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); Manual for Complex Litigation, Fourth, § 21.71 p. 525 ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class…"); *Hubbard v. Donahoe*, No. 03-1062, 2013 WL 3943495, at *4, 8 (D.D.C. July 31, 2013) (collecting cases) (awarding $910,000 of the $4,550,000 benefit to the class and holding that "the Court considers the separate funds for class recovery and attorneys' fees collectively as a 'constructive common fund,' valued at $4,550,000."); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1072 (S.D. Tex. 2012) (collecting cases and awarding attorneys' fees equal to 20% of the settlement value and holding that

(1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50 (internal citations and quotation marks omitted). *Accord Polaroid*, 2007 WL 2116398, at *2. Courts consider the same factors in applying the lodestar method. *Id.*[9] Here, the fee requested is plainly justified under either method.

### D. The Requested Fee Is Justified Under The Percentage Method

#### 1. The Full Value Of The Settlement Fund Available Is Considered

Attorneys' fees awarded as a percentage of a fund must take into consideration the entirety of the fund, not only that portion received directly by the class members. *See Masters*, 473 F.3d at 437. In *Masters*, the Second Circuit held that: "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made

---

"[h]aving two funds -- one for the claimants, one for the attorneys -- is a well-recognized variant of a common-fund arrangement."); *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007) (awarding 22.5% of value of recovery and holding that "the Court believes that the settlement in this case represents a constructive common fund" despite the fact that "the settlement has separate funds for class recovery and attorneys' fees."); *Lopez v. Youngblood*, No. 07-0474, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) (awarding 28.5% of the percentage of the recovery where attorneys' fees were paid separate and apart from benefit to the class and citing with approval *Johnston* and *In re Vitamins Antitrust Litig.*, No. 99-197, 2001 WL 34312839, at *4 (D.D.C. July 16, 2001)).

[9] The Second Circuit has held that a district court may use either method. *Id.* However, the Second Circuit disfavors the lodestar method because it "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 122 (internal citation omitted). The percentage method is considered preferable "because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition." *Hicks v. Stanley*, No. 01-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (citation omitted).

available whether claimed or not.  We side with the circuits that take this approach." *Id.*[10]  The

Court continued, "[o]ur own cases refer to 'percentage of the fund,' and 'percentage of the

recovery.'  We take these references to be to the whole of the Fund." *Id.* (emphasis in original,

citations omitted).  *See also Torres*, 2013 WL 2257859, at *3 (calculating fees "on the basis of

the total funds made available."); *Aros v. United Rentals, Inc.*, No. 10-73, 2012 WL 3060470 (D.

Conn. July 26, 2012) ("In applying the common fund method, the Supreme Court, the Second

Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a

percentage of the entire maximum gross settlement fund, even where amounts to be paid to

settlement class members who do not file claims will revert to the Defendants.").[11]

Here, the Settlement provided for a benefit to the Class in the amount of $7,758,260

which includes the amount made available to the Class, the attorneys' fees and expenses and

---

[10] Citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999) (approving district court's award of 33 1/3% based "on a percentage of the total fund rather than the actual payments made to class members."); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) (per curiam) (reversing the district court award of 33% of the claimed fund and instead awarded attorneys' fees of $4.5 million or 33% of the total funds that were available to the class even though the actual payout only totaled approximately $10,000.).

[11] *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) (confirming the permissibility of using the entire fund as the appropriate benchmark); *Velez v. Novartis Pharmaceuticals Corp.*, No. 04-09194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (quoting *Masters*, 473 F.3d at 437) ("[T]his Circuit has ruled that '[a]n allocation of fees by percentage should therefore be awarded on the basis of total funds made available whether claimed or not.'"); *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 443 (S.D.N.Y. 2004) (noting that attorneys' fees equivalent to one-third of common fund of $18.4 million was approved notwithstanding that only $5.6 million of the $18.4 was claimed by class members with the remaining $11.8 million unclaimed and reverting to the defendants); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (awarding $625,000 of $2.1 million fund amount despite only $500,000 in claims); 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:6, at 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed).

service awards sought. As such, Class Counsel's reasonable fee request for an award of fees and costs of $1.5 million and $20,000 represents 19.6% of the value of the Settlement.

### 2. The Fee Award Is Supported By The *Goldberger* Factors

The 19.6% that Class Counsel is seeking and which Bank of America has agreed to pay separate and apart from the Class recovery is at the middle of the spectrum of fee awards repeatedly approved by the Courts of this Circuit, with many cases awarding close to 33% of the settlement value. *See Taft v. Ackermans*, No. 02-7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) ("Thirty percent of a larger settlement fund could constitute a windfall; however, a settlement fund of this size [$15.17 million] does not create such an issue."); *Hicks*, 2005 WL 2757792, at *9 ("A settlement amount of $10 million does not raise the windfall issue in the same way as would a $100 million settlement, and a 30% fee does not produce such a windfall."). Moreover, the requested fee is eminently reasonable in light of the quality of the representation, the risk incurred by Class Counsel, and the other *Goldberger* factors.

### a. The Time And Labor Expended By Counsel

The time and labor expended by Class Counsel are set forth in detail in the accompanying Declaration. In general, counsel devoted more than 1,600 hours over the course of just under three year prosecuting the actions.[12] As set forth above, before bringing these actions, Class Counsel exhaustively investigated the claims of Plaintiffs and the Class, and independently obtained copies of the relevant recorded mortgage and lien release documents. Blankinship Dec. ¶ 3. After filing the actions, Class Counsel amended the complaints; and the parities engaged in extensive motion practice. Other than the motion to dismiss each case, the parities fully briefed Plaintiffs' motion to substitute a party in the *Adler* Action. In the *Whittenburg* Action, the

---

[12] Class Counsel eliminated four time keepers with less than 30 hours of time billed to these actions from the above-referenced calculation.

parties fully briefed Plaintiffs' motion to compel related to a discovery dispute involving the applicable statute of limitations.  In both Actions, the parties fully addressed Bank of America's motion to compel the production of plaintiff solicitation letters, and fully briefed, but did not file Plaintiffs' motion for class certification and Defendant's opposition thereto.  As discussed above, Class Counsel also engaged in substantial discovery.   In addition, Class Counsel engaged in a day-long mediation session with Defendant's counsel.  *Id.* ¶ 8.

Moreover, Class Counsel is a modestly-sized firm.  As a result, the time spent on this action in the hope of eventually obtaining a substantial verdict or settlement for the Class, and a fee for Class Counsel, was a significant commitment of the firm's resources.  *Id.* ¶ 21.  While Class Counsel carefully screens its class action contingency matters to enhance its likelihood of success, there was absolutely no assurance that the extraordinary commitment of time and effort devoted to these actions would result in the payment of any fee at all.  *Id.* ¶ 22.  Class Counsel should be amply compensated for the substantial time and labor invested to obtain this outstanding settlement on behalf of the Class and should not be punished for its efficiency in achieving such a positive result.

### b.  The Magnitude And Complexity Of The Litigation

The requested fee award is reasonable in light of the magnitude and complexity of the litigation.  The Class itself comprises 17,058 members and Defendant agreed to a settlement making available $6,238,260 to the Class.  By any measure, the magnitude of the case is substantial, fully justifying Class Counsel's investment of time and labor, and fully merits the requested fee award.

### c. The Risk Of The Litigation

As discussed above, Class Counsel and Plaintiffs faced substantial obstacles in successfully prosecuting this case. The Second Circuit has recognized that the risk involved in prosecuting a class action is an important consideration in determining an appropriate fee award. This factor is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys that prosecute them, and it embodies an assumption that contingency work is entitled to greater compensation than non-contingency work. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 592.

Of course, Class Counsel received no compensation while incurring the risks of the litigation. Moreover, there was no way to know whether Class Counsel would ever be compensated for its substantial commitment to these actions. In fact, the case law is littered with unsuccessful class actions that provided no relief to the putative class and no fee for class counsel. *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *6 ("[T]he risk of non-payment in complex cases, such as this one, is very real. There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. There is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery.") (collecting cases).[13]

Class Counsel incurred 100% of the risk, devoting their time and labor to gather evidence of Defendant's suspected wrongdoing, evaluating Defendant's potential liability, analyzing

---

[13] In numerous class actions, counsel was awarded no fee despite investing thousands of hours in the litigation. *See, e.g., In re Apollo Group, Inc. Sec. Litig.*, No. 04-2147, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (setting aside jury verdict of $277 million based on insufficient evidence); *In re JDS Uniphase Corp. Sec. Litig.*, No. 02-1486, slip op. (N.D. Cal. Nov. 27, 2007); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million and entering judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning verdict in favor of plaintiff class based on subsequent change in law).

potential legal theories, drafting the complaint, and engaging in substantial motion practice and discovery. Throughout, there was no assurance of success or compensation. The requested fee award is entirely reasonable in light of the risks incurred by Class Counsel.

### d. The Quality Of Representation

The quality of Class Counsel's representation is reflected in the reputation of Class Counsel; the experience of the attorneys principally involved in these action; and above all, the manner in which they prosecuted these actions from the pleadings, through motion practice and discovery, to the settlement negotiations and the instant motion for final approval.

The Court has observed first-hand in these cases the skills and abilities of Class Counsel, and Class Counsel enjoys a strong reputation in the area of complex and class action litigation. Blankinship Dec. ¶¶ 12-13. Class Counsel also appears to be the first firm to seek to represent a class of New York mortgagors who have claims under the N.Y. Real Prop. Acts. Law § 1921 and N.Y. Real Prop. Law § 275 for a bank's failure to timely present certificates of discharge. *Id.* ¶ 14. Moreover, Class Counsel has demonstrated its ability to successfully prosecute these actions, having survived motions to dismiss brought by highly experienced counsel and having wrested the proposed Settlement from an aggressive and well-healed bank. Moreover, as demonstrated by its Firm Resume, attached as Exhibit 1 to the Blankinship Dec., its attorneys, including D. Greg Blankinship and Todd S. Garber, have been appointed class counsel in numerous other cases.

The Settlement negotiated with Defendant is a highly favorable outcome for the Class, and is the direct result of the creativity, diligence, hard work, and skill brought to bear by Class Counsel at every stage of the proceedings. Throughout the litigation, Class Counsel has put the best interests of the Class ahead of its own, negotiating the most favorable settlement terms

possible and then negotiating a fee to be paid by Bank of America, rather than the Class, and which in no way diminishes or erodes the benefits received by Class members. Class Counsel's exemplary prosecution of this class action weighs strongly in favor of the proposed fee award.

The high quality of the opposition that Plaintiffs' counsel faced is a further testament to the quality of Plaintiffs' counsel's representation. Defendant is represented by skilled and highly regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases. Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance, and in these cases, it supports approval of the requested fee. *See, e.g., In re Marsh Erisa Litig.*, 265 F.R.D. at 148 (reasonableness of fee was supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations").

### e. The Requested Fee In Relation To The Settlement

The federal courts have established that a standard fee in complex class action cases like this one, where the plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit. *Id.* at 149 (collecting cases and awarding $11,665,500 or one-third of the recovery). Plaintiffs are only requesting 19.6% of the value of the settlement, and Plaintiffs secured Defendant's agreement to pay this amount separate and apart from the benefit obtained for the Class. On a percentage basis, the compensation requested here is plainly well within the range of percentage fee awards within the Second Circuit, particularly in cases with similarly sized settlement funds.

The $1.5 million and $20,000 award for fees and expenses that Class Counsel has requested, and that Bank of America has agreed to pay, is in line with awards from courts within

this Circuit in similar circumstances and leans towards the lower end given the particular facts of this case and the size of the Settlement.

### f.  Public Policy Considerations

Strong public policy supports rewarding counsel for bringing successful consumer protection litigation.  *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (holding that if the "important public policy [of enforcing consumer protection laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing [consumer protection] laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

The "purpose" of New York Real Property Actions and Proceedings Law § 1921 and New York Real Property Law § 275 is "[t]o insure that a certificate of discharge of mortgage is properly and timely issued and to impose a penalty on the lending institution or person holding the mortgage for failing to do so."  Thus, the Settlement would deter transgressions of the statutes by banks and mortgagees in general.  "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever."  *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010).

Here, with the objection deadline being the day after this brief is to be filed, not a single Class member has yet objected to Class Counsel's requested fee.  Nor are these cases mega fund cases and the requested 19.6% come nowhere near bestowing a windfall on Class Counsel (see

lodestar cross-check *infra*).  Therefore, the policy of awarding fees in a lower range to account for economies of scale and to prevent windfalls is not at issue here.  Simply put, there is no reason to depart from the $1.5 million and $20,000 that Bank of America has agreed to pay as this amount falls squarely within the range of fees normally approved within this Circuit under either the percentage of the fund or lodestar methodology, and any reduction would be against public policy as it could only serve as a disincentive to future class counsel from bringing similar cases and would reward the alleged wrongdoer for the benefit of neither the Class or the public at large.

Taking into account all the *Goldberger* factors, the $1.5 million and $20,000 award and fees to Class Counsel comprises a reasonable percentage of the benefit bestowed on the Class, and should be approved.

### E.     The Fee Is Justified Under The Lodestar/Multiplier Method

Application of the lodestar method confirms the reasonableness of Class Counsel's request.  Despite its criticism of the lodestar method, the Second Circuit has advised that it remains potentially useful as a "cross-check" against the percentage method.  *Goldberger*, 209 F.3d at 50.  "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized."  *Id.* (citation omitted).

Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rates, and then the court adjusts that lodestar figure (by applying a multiplier) "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23.  *See also Maley*, 186 F. Supp. 2d at 370 (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration

of a number of factors, including the contingent nature of success and the quality of the attorney's work") (citation omitted). "In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court." *In re Telik*, 576 F. Supp. 2d at 590 (a multiplier of 4 .65 was "well within the range awarded by courts in this Circuit and courts throughout the country") (citing *Maley*, 186 F. Supp. 2d at 369).[14]

The fee requested for these cases is more than justified under the lodestar method. Class Counsel reasonably devoted in excess of 1,600 hours to these actions, including time spent researching the facts and the law, drafting the complaint, conducting discovery, motion practice, negotiating the settlement, and responding to hundreds of class members' inquiries. Applying Class Counsel's hourly rates,[15] which are reasonable and well within the range typically charged by similarly well qualified counsel in this District, yields a lodestar of $922,171.

There is no question that Class Counsel's time was spent efficiently. Blankinship Decl. ¶ 23. Moreover, Class Counsel has already factored potential inefficiencies into the lodestar, cutting hours for which Class Counsel actually billed. *Id.* Class Counsel's use of billing

---

[14] *See, e.g., Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-8472, 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013) (awarding lodestar multiplier of 3.8, holding it "well within the range of multipliers that have been granted by courts in this Circuit and elsewhere" and noting that "Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers.") (collecting cases); *Spicer v. Pier Sixty LLC,* No. 08-10240, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts.") (quoting *In re Telik*, 576 F. Supp. 2d at 590); *deMunecas v. Bold Food, LLC*, No. 09-440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar.").

[15] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998).

judgment recommends against any further deduction in the lodestar used for the purposes of performing a cross-check.

Moreover, the hourly rates charged by counsel are reasonable, indeed modest, by comparison with other firms in the Southern Districts. "[T]he American Lawyer recently reported that the median billing rate for partners at many leading law firms exceeds $900/hour. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26.[16]

Comparing the lodestar with the requested fee yields a multiplier of 1.65. That multiplier is unquestionably within the range of multipliers found reasonable by courts in this Circuit, and is fully justified in light of the effort undertaken, the recovery achieved, risks involved, and the efficiency with which these cases were litigated. In sum, the 1.65 multiplier sought here is reasonable and within the range approved in past cases.

### F. The Reaction Of The Class Is Overwhelmingly Favorable

Courts give "great weight" to the reaction by members of the Class to a class action settlement. *Maley*, 186 F. Supp. 2d at 374 (citation omitted). Numerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee. *Id. See also Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (lack of objections is "strong evidence" of the reasonableness of the fee request). Here, not a single Class member has thus far objected to the fee request, with the deadline to do so being the day after this brief is to be filed. This "overwhelmingly positive

---

[16] *See, e.g., In re Nissan Radiator/Transmission Cooler Litig.,* No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (finding reasonable attorneys' fees based on hourly rates ranging from $750 (partner) to $650 (associate)); *Chin v. RCN Corp.*, No. 08-7349, 2010 WL 3958794, at *5-6 (S.D.N.Y. Sept. 8, 2010) (approving a "blended" hourly rate of approximately $605); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (hourly rates up to $880 were "not extraordinary for top New York law firms"); *Telik*, 576 F. Supp. 2d at 589-90 (noting that hourly rates of $700-$750 for partners were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work).

response to date by the Class attests to the approval of the Class with respect to both the Settlement and the fee and expense application." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29; *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("Notice of the fee request and the terms of the settlement were mailed to 300,000 class members, and only two objected.  We agree with the District Court such a low level of objection is a 'rare phenomenon.'").

### III.    THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of these actions.  *See* Blankinship Dec. ¶ 19.  In fact, Class Counsel capped its request at $20,000 despite incurring $56,109.71 in litigation expenses.  These expenses are properly recovered by counsel.  *See In re China Sunergy Sec. Litig.*, No. 07-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'").  As set forth in detail in the declaration filed herewith, Class Counsel incurred $56,109.71 in litigation expenses on behalf of the Class in the prosecution of these actions.  *Id.* Reimbursement of these expenses is fair and reasonable and the expenses are encompassed by the $20,000 request.  *See, e.g., In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.*, 09-MD-2102, 2010 WL 3422722, at *8-9 (S.D.N.Y. Aug. 24, 2010) (approving flat payment covering fees and expenses).

All of the expenses were reasonable and necessary to the prosecution of these actions, and are of the type that law firms typically bill to their clients and that courts typically approve for reimbursement.[17]

## IV.    SERVICE AWARDS

Providing service awards to consumers who come forward to represent a class is a necessary and important component of any class action settlement. *See Viafara v. MCIZ Corp.*, No. 12 7452, 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014) ("Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.  It is important to compensate plaintiffs for the time they spend and the risks they take.  The Court finds reasonable service awards of $12,500 to Viafara for the MCIZ Settlement and $12,500 for the JAD Settlement.") (citations omitted); *Elliot v. Leatherstocking Corp.*, No. 10-0934, 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012) ("Service awards are common in class action cases and are important to compensate a plaintiff for the time and effort expended in assisting in the prosecution of the litigation.").

Class Counsel respectfully requests that the Court approve the payment of service awards to Plaintiffs in the amount of $5,000 each in recognition of their efforts on behalf of the Class.

---

[17] *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02-1484, 2007 WL 313474, at *24 (S.D.N.Y. Feb. 1, 2007) (awarding expenses for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery, local transportation/meals, filing fees and attorney services") (internal quotations omitted); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *10 (awarding expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel"); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (same).

Pursuant to the Settlement Agreement, Bank of America has agreed to pay these awards using its own resources, which means these payments will not reduce the benefits provided to the Class members. The requested payments are well deserved and fall well within the range of incentive awards approved in prior cases. *Polaroid*, 2007 WL 2116398, at *3 (citing *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000 to representative plaintiffs in class actions). Moreover, as with Class Counsel's fee request, the service award request was subject to arm's length negotiations between parties and was adequately disclosed in advance to the Class and not yet objected to.

Plaintiffs reviewed, and discussed with Class Counsel, the pleadings, discovery demands, discovery responses and memoranda of law. Plaintiffs conferred with Class Counsel regarding the status of the cases and the settlement negotiations, at all times encouraging Class Counsel to obtain the best possible result for the absent class members. Blankinship Dec. ¶ 9. Plaintiffs' participation was substantial and indispensable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the request for attorney's fees and costs and service awards in the amounts indicated.


Dated:      White Plains, New York
            June 29, 2016

                          FINKELSTEIN, BLANKINSHIP, FREI-
                          PEARSON & GARBER, LLP

                    By:   */s/ D. Greg Blankinship*
                          D. Greg Blankinship
                          Todd S. Garber
                          445 Hamilton Ave, Suite 605
                          White Plains, New York 10601
                          Tel: (914) 298-3290

gblankinship@fbfglaw.com
tgarber@fbfglaw.com

*Attorneys for Plaintiffs and the Class*